UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Chad Stoner, | ) |
|         Petitioner, | ) |
| | )    No. 21 CV 50130 |
| v. | )    Judge Iain D. Johnston |
| | ) |
| Thomas Bergami,[1] | ) |
|         Respondent. | ) |

**MEMORANDUM OPINION AND ORDER**

Chad Stoner has filed a petition under 28 U.S.C. § 2241 seeking the restoration of good conduct time he lost for possessing a weapon while incarcerated. For the following reasons, the petition [1] is denied.

**BACKGROUND**

Mr. Stoner is a prisoner at USP Lee,[2] but when he filed this petition was at USP Thomson, and challenges a disciplinary decision handed down while he was at FCI Hazelton.[3] According to his petition, while at FCI Hazelton staff threatened to send him to the Special Housing Unit for filing grievances. On July 21, 2019, he reported the threats directly to the Mid-Atlantic Regional Director of the Bureau of Prisons. Three days later on July 24, 2019, staff conducted a fire drill and ordered all prisoners to leave their cells. After the drill, Mr. Stoner and his cellmate were questioned about a knife allegedly found during a search of their cell conducted during the fire drill. Because the officer who searched the cell reported that he found the knife in Mr. Stoner's legal materials, his cellmate was allowed to leave, but Mr. Stoner received an incident report and was transferred to the Special Housing Unit.

Mr. Stoner contends that he asked the unit disciplinary committee officer to preserve video of the search of his cell, and during two separate disciplinary hearings asked the disciplinary hearing officer to review the video. Mr. Stoner believed the video would reveal that no search had occurred because his legal materials had been locked up, remained locked after the alleged search, and because his cell was otherwise undisturbed. According to Mr. Stoner, during the first hearing he denied that he previously admitted ownership of the knife, but the hearing officer told him that if he did not admit ownership, he would also discipline Mr. Stoner's

---

[1] Mr. Stoner's petition did not name a respondent, and it appears the clerk's office listed the United States. The proper respondent to a habeas petition is the prisoner's custodian. *See* 28 U.S.C. § 2242. The warden of USP Thomson is now Thomas Bergami. Pursuant to Federal Rule of Civil Procedure 25(d), he is automatically substituted as the defendant to this suit.
[2] *See* https://www.bop.gov/inmateloc/ (last visited July 8, 2022).
[3] A habeas petition is properly filed in the district where the prisoner is located at the time of filing. *See al–Marri v. Rumsfeld*, 360 F.3d 707, 712 (7th Cir.2004). "[A] prisoner's transfer from one federal facility to another during the pendency of a habeas corpus proceeding does not affect the original district court's jurisdiction." *In re Hall*, 988 F.3d 376, 378 (7th Cir. 2021).

cellmate, and then adjourned the hearing to give Mr. Stoner time to think things over. According to Mr. Stoner, during the second hearing, the hearing officer continued to press Mr. Stoner to admit that the knife was his, and if he refused the hearing officer threatened to leak to the other prisoners that Mr. Stoner had ratted out his cellmate. But Mr. Stoner maintained that the knife was not his, the cell was never searched, that all of this occurred because he had reported staff threats to the Mid-Atlantic Regional Director, and that video footage would exonerate him. But he alleges the disciplinary hearing officer never reviewed the video.

On September 10, 2019, the disciplinary hearing officer issued a written decision finding that Mr. Stoner had committed the prohibited act of possession of a weapon, and sanctioned him with the loss of 40 days' good conduct time, 60 days' disciplinary segregation, 180 days' loss of commissary, and fined him $25. According to the written decision, the hearing officer reached his decision relying on the incident report stating that an officer found the knife on the upper lip of the locker containing Mr. Stoner's legal materials, supporting materials consisting of a picture of the knife and a chain of custody log, and on the fact that Mr. Stoner offered no evidence other than a statement that the incident report was a "complete lie." Response [24] at 95. The hearing officer also wrote that he relied on "your admission," but neither the incident report nor the disciplinary hearing officer's written decision describe any admission by Mr. Stoner, and the written decision states that Mr. Stoner denied the charges. *Id.* at 94-95

Mr. Stoner contends that following the hearing he told the disciplinary hearing officer that he wanted to appeal, but that the officer laughed and responded, "I bet you would." Petition [1] at 13. He further contends that he was refused several requests for the form needed to appeal, but "I <u>did</u> eventually complete an appeal and gave it to officer Christopher Bennett to be mailed, however, no response was ever issued and according to BOP records my appeal was never received . . . ." Reply [29] at 12 (emphasis in original). Mr. Stoner alleges that officers' failure to provide him with the form requested, and failure to mail the appeal he completed, made the appeal process unavailable to him. On March 22, 2021, he filed the instant petition asking that his lost good conduct time be restored.

## ANALYSIS

Persons in the custody of the Bureau of Prisons have a liberty interest in good conduct time, and can challenge the loss of good conduct time by filing a motion for habeas relief under 28 U.S.C. § 2241. *See Jackson v. Carlson*, 707 F.2d 943, 946 (7th Cir. 1983). Although prisoners have due process rights in prison disciplinary proceedings, such proceedings "are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). As a result, a prisoner has received due process if each of the following requirements are met: the prisoner (1) receives written notice of the disciplinary charges at least 24 hours before a disciplinary hearing; (2) has an opportunity to be heard before an impartial decision maker; (3) is able to call witnesses and present evidence that will not be unduly hazardous to safety or correctional goals; (4) receives a written statement of the evidence relied on and the reason for the decision; and (5) receives disclosures of any exculpatory evidence. *Id.* at 564-66.

A federal prisoner must exhaust his federal administrative remedies before seeking habeas relief in court. *See Richmond v. Scibana*, 387 F.3d 602, 604 (7th Cir. 2004) ("A common-law exhaustion rule applies to § 2241 actions even though § 1997e(a) does not."). Proper exhaustion requires compliance with the Bureau of Prisons' Administrative Remedy Program, which is set out at 28 C.F.R. §§ 542.10-542.19. *See Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."). Under the program, a prisoner must first attempt to resolve an issue informally. *See* 28 C.F.R. § 542.13. Within 20 days of the date on which the basis of the request occurred, a prisoner may initiate administrative review by filing a written Administrative Remedy Request using form BP-9. *Id.* § 542.14. The warden must respond within 20 days. *Id.* § 542.18. If the prisoner is not satisfied with the response, within 20 days he may submit an Appeal to the Regional Director using form BP-10, which must be "accompanied by one complete copy or duplicate original of the institution Request and response." *Id.* § 542.15(a), (b). The Regional Director has 30 days to respond. *Id.* § 542.18. If the prisoner is still not satisfied, he must take a final appeal to the Office of General Counsel in Washington, D.C. using form BP-11, which must be "accompanied by one complete copy or duplicate original of the institution and regional filings and their responses." *Id.* § 542.15(a), (b). The General Counsel must respond within 40 days. *Id.* § 542.18. If a prisoner does not receive a timely response to his informal request, grievance, or appeals, he "may consider the absence of a response to be a denial at that level." *Id.*

The common law recognizes exceptions to exhaustion, but the hurdle is high. *See Richmond*, 387 F.3d at 604. Exhaustion will be excused only when:

(1) requiring exhaustion of administrative remedies causes prejudice, due to unreasonable delay or an indefinite timeframe for administrative action;
(2) the agency lacks the ability or competence to resolve the issue or grant the relief requested;
(3) appealing through the administrative process would be futile because the agency is biased or has predetermined the issue; or
(4) where substantial constitutional questions are raised.

*Gonzalez v. O'Connell*, 355 F.3d 1010, 1016 (7th Cir. 2004) (internal quotation marks and citations omitted). The exhaustion requirement is not jurisdictional and so is waived if not raised by the defendant. *See Del Raine v. Carlson*, 826 F.2d 698, 703 (7th Cir. 1987).

Here, the defendant asserted the defense of failure to exhaust. *See* Response [24] at 3-4. The government contends that its review of the SENTRY system, into which all requests for administrative remedies including appeals are entered, reveals that Mr. Stoner never appealed the September 10, 2019, decision of the disciplinary hearing officer.

In response, Mr. Stoner contends that he did complete an appeal to the Regional Director including the required BP-10 form that he gave to Officer Christopher Bennett to mail, and the fact that SENTRY contains no record of his appeal shows that staff interfered with his ability to pursue administrative remedies. As Mr. Stoner notes in his reply brief, "a remedy becomes

'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). In *Dole*, a prisoner gave a grievance form to a correctional officer to transmit to the Illinois Administrative Review Board, but the prisoner never heard back from the ARB. The Seventh Circuit concluded that administrative process was unavailable and exhaustion was excused because once the prisoner gave the grievance form to the correctional officer, he had no control over the transmission of the complaint, the state's administrative process does not provide for a receipt system, and does not provide for any type of alert that the ARB had received his complaint. *See id.* at 810. *Dole* distinguished cases involving a misstep by the prisoner, such as cases where a prisoner did not submit a grievance at all, or a grievance was untimely because it contained insufficient postage, and so exhaustion in those cases was not excused. *Id.* at 810-11.

Although *Dole* involved a grievance given to a correctional officer but never forwarded to the proper review board, it is nevertheless distinguishable because of a misstep by Mr. Stoner. Under the Bureau of Prisons' Inmate Discipline Program, the Regional Director must respond to a prisoner's administrative filing within 30 days. *See* 28 C.F.R. § 542.18 A prisoner "may consider the absence of a response to be a denial at that level." *See* 28 C.F.R. § 542.18. The prisoner then has 20 days to appeal to the next level, the Regional Director. *See* 28 C.F.R. § 542.15(a). Therefore, when Mr. Stoner never received from the Regional Director a timely response to his appeal, the Inmate Discipline Program provided him the opportunity to appeal to the Office of General Counsel. Unlike the Illinois grievance program at issue in *Dole*, the Bureau of Prisons' Inmate Discipline Program explains how to proceed to the next step in the grievance process if a prisoner does not receive timely responses along the way.

Mr. Stoner never contends that he appealed to the Office of General Counsel, or that he was ever denied requests for the required BP-11 form. In the absence of any allegation that he was kept from proceeding to the required next step—appealing to the Office of General Counsel—Mr. Stoner has identified no common-law exception excusing him from fully exhausting. Therefore, his failure to follow each available step of the Inmate Discipline Program resulted in a failure to exhaust. *See Chambers v. Ciolli*, No. 21-1484, 2021 U.S. App. LEXIS 31951, at *3 (7th Cir. Oct. 25, 2021).

Because Mr. Stoner did not fully exhaust, the Court does not reach the merits of his petition. If true, his allegation that no one considered a potentially exculpatory video that would have established that staff framed him is troubling. *See Piggie v. McBride*, 277 F.3d 922, 925 (7th Cir. 2002) ("prisoners are entitled to have exculpatory evidence disclosed unless its disclosure would unduly threaten institutional concerns."). The Court notes that Mr. Stoner's allegation that he requested the video is contested—the hearing officer states that Mr. Stoner never asked that the video be reviewed. Response [24] at 38. But these issues needed to first be raised at each level of the administrative appeal process as detailed in the Inmate Discipline Program, giving the Bureau of Prisons the opportunity to address Mr. Stoner's claims. *See Rice v. Sproul*, No. 20 CV 386, 2020 U.S. Dist. LEXIS 80155, at *3 (S.D. Ill. May 6, 2020) ("the entire point of exhaustion requirements is to allow agencies the opportunity to evaluate and remedy errors internally.").

## CONCLUSION

For the reasons given, Mr. Stoner's petition [1] is denied.

Date: July 8, 2022      By: _____
                                                  Iain D. Johnston
                                                  United States District Judge